IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


JOSHUA MICHAEL BEARDEN,

     Plaintiff,

v.                                                                                  No. 23-cv-00583-JCH-DLM

BOARD OF COMMISSIONERS OF
BERNALILLO COUNTY, CITY OF
ALBUQUERQUE, METROPOLITAN
DETENTION CENTER, GARY TRUJILLO JR.,
FNU CHIEF OF BERNALILLO COUNTY
METROPOLITAN DETENTION CENTER,
FNU ASSISTANT CHIEF OF BERNALILLO
COUNTY METROPOLITAN DETENTION CENTER,

     Defendants.


**MEMORANDUM OPINION AND ORDER OF DISMISSAL**

**THIS MATTER** is before the Court on Plaintiff Joshua Bearden's Amended Prisoner

Complaint for Violation of Civil Rights, filed August 7, 2023. (Doc. 2) (the "Complaint").

Plaintiff is a prisoner in the custody of the New Mexico Corrections Department, proceeding pro

se and in forma pauperis. Plaintiff claims that the conditions at the Bernalillo County Metropolitan

Detention Center ("MDC"), where he was in custody from July 2021 through July 2022, violated

his rights protected by the First, Eighth, and Fourteenth Amendments to the United States

Constitution. (Doc. 2 at 3, 5).  Having reviewed the Complaint and the relevant law pursuant to

the screening requirement of 28 U.S.C. § 1915A, the Court finds that the Complaint must be

dismissed for failure to state a claim upon which relief can be granted. Plaintiff will be granted an

opportunity to amend.

    I.       Background.

For the limited purpose of this Memorandum Opinion and Order, the Court assumes that the following facts taken from the allegations in the Complaint are true.

Due to a staff shortage at MDC during the year Plaintiff was confined there, Plaintiff was subject to lockdowns lasting 72 hours at a time, and on one occasion, for six days. (Doc. 2 at 6). When jail officials let him out of his cell, he had 20 minutes to shower and use the phone. (Id.). He was not given adequate time for recreation or among the general jail population. (Id.).

Additionally, when Plaintiff first arrived at MDC, a corrections officer ("CO") escorting Plaintiff to his cell repeatedly grabbed Plaintiff by the arm, irritating a pre-existing scab. (Doc. 2 at 7). When the CO did not comply with Plaintiff's request to stop grabbing that part of his arm, Plaintiff threw his arm out of the CO's grasp. (Id.). The CO then pushed plaintiff and a group of people (identified only as "they") tackled Plaintiff, accused him of threatening a CO, and sentenced him to 60 days segregation with no visiting or canteen privileges. (Id.). Criminal charges filed against Plaintiff for the incident were dismissed when the CO involved in the incident did not appear at a court hearing. (Id.).

In another incident, Plaintiff alleges that unknown individuals (again, identified only as "they) accused him of "grabb[ing] a girl's butt" on the way to court when he was in MDC custody previously. (Doc. 2 at 7). Plaintiff alleges that a detective investigating the incident confirmed Plaintiff's version of events, *i.e.*, that he "ran into [the girl's] butt" when his hands were in his pockets. (Id.). Despite Plaintiff's denial and the apparent existence of video confirming his version of events, he was sentenced to an additional 35 days in segregation. (Id.). In total, Plaintiff was in segregation for 95 days, during which time he was permitted to leave his cell for 45 minutes a day to shower and use the phone. (Id.).

2

Plaintiff further alleges that in the year he spent in jail, he was transferred back and forth from MDC to Cibola County jail several times. (Doc. 2 at 7). On three occasions when he went back to MDC from Cibola, he discovered that MDC officials threw away his canteen items and once threw away his shoes valued, collectively, at $400. (Id.). Plaintiff alleges that another inmate was reimbursed when his canteen items were thrown away, but Plaintiff was not. (Doc. 2 at 10). When he was transferred to prison, Plaintiff alleges he authorized MDC to release his property to his dad, but when his dad went to MDC to retrieve the property, MDC officials allegedly falsely told him that plaintiff had not signed the release. (Doc. 2 at 8).

Finally, Plaintiff alleges that in February or March 2022, he requested medical treatment for a growth on the inside of his lip. (Id.). A doctor and, separately, a dentist looked at the growth but could not diagnose it. (Id.). Someone ("they") allegedly told Plaintiff that he would have a biopsy, but four months passed before Plaintiff was moved out of MDC and into prison, and the biopsy was not performed. (Id.). Plaintiff alleges, further, that other medical conditions went ignored—namely, body sores from lying down all day, stomach aches from rotten food, and worsening mental health.

Based on the foregoing, Plaintiff claims his rights guaranteed by the First, Eighth, and Fourteenth Amendments to the United States Constitution were violated by the numerous defendants. (Doc. 2 at 3, 5). Plaintiff seeks $5 million in damages, half of which he would allocate to remediating the staffing shortage at MDC. (Doc. 2 at 6).

II.   Analysis.

A.  Standard of Review.

As Plaintiff is proceeding *pro se* in this civil action against government officials and governmental entities, the Complaint must be screened under 28 U.S.C. § 1915A. The Court must

dismiss a complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A(b)(1). A pleading that states a claim for relief must contain. a short and plain statement showing that the pleader is entitled to relief, Federal Rule of Civil Procedure 8(a)(2), and it must contain "sufficient factual matter, accepted as true, to state a claim. . . that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim has facial plausibility when the facts alleged in the complaint support the Court's reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

The Court construes pro se pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (discussing the Court's construction of *pro se* pleadings). This means that "if the court can reasonably read the pleadings to state valid claim on which [he] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction or his unfamiliarity with pleading requirements." *Id.* It does not mean, however, that the court will "assume the role of advocate for the pro se litigant." *Id.*

   B.  42 U.S.C. Section 1983.

42 U.S.C. § 1983 allows a person whose federal rights have been violated by state or local officials "acting under color of state law" to sue those officials. A § 1983 claim is comprised of two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McLaughlin v. Bd. of Trustees of State Colls. of Colo.*, 215 F.3d 1168, 1172 (10th Cir. 2000). A municipality, such as a county or a city, may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694

4

(1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."). For § 1983 municipal-liability purposes "a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision" are considered an "official policy or custom." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). But municipal liability is limited "to action for which the municipality is actually responsible," which is different from the acts of its employees. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

C. Plaintiff's Claims Against the County, the City, and Officials in Their Official Capacities.

Among the named defendants in this lawsuit are the County of Bernalillo, Gary Trujillo Jr. in his official capacity, the Chief and Assistant Chief of MDC in their official capacities, MDC, and the City of Albuquerque. To state a claim against a municipality, a plaintiff must allege facts showing that an official policy is the moving force behind the injury alleged. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). This requires the plaintiff to show "(1) a causal relationship between the policy or custom and the [alleged violation of a Constitutional right] and (2) deliberate indifference." *Burke v. Regaldo*, 935 F.3d 960, 999 (10th Cir. 2019). The "deliberate indifference" standard may be satisfied by showing that "a municipal actor disregarded a known or obvious consequence of" the attending custom or policy. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Suing an official in his official capacity is the same as asserting a claim against the municipality or county the official represents. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). The allegations in the Complaint do not

satisfy these standards. The claims against the County, the City of Albuquerque, and the officials

in their official capacities are therefore not viable as pled and will be dismissed without prejudice.

Plaintiff will be given an opportunity to file an amended complaint and, should he include claims

against these defendants, he should endeavor to satisfy the required pleading standards.

MDC, itself is not subject to liability under § 1983 because a "detention facility is not a

person or legally created entity capable of being sued." *White v. Utah*, 5 F. App'x 852, 853 (10th

Cir. 2001); *see Gaines v. U.S. Marshals Serv.*, 291 F. App'x 134, 135 (10th Cir. 2008) (a county

detention center "is not a suable entity"); *Gallegos v. Bernalillo Cnty. Bd. of Cnty. Commr's*, 272

F. Supp. 3d 1256, 1267 (D.N.M. 2017) (In the § 1983 context, "suing a detention facility is the

equivalent of attempting to sue a building."). For claims against MDC, the Board of County

Commissioners of the County of Bernalillo (named as a defendant in this case) is the proper

defendant. *See Mayfield v. Pres Hosp. Admin.*, No. CV 17-00398 JCH/KRS, 2021 WL 3772214,

at *3 (D.N.M. Aug. 25, 2021) ("MDC is an agency of Bernalillo County, not a municipal

agency[.]"); NMSA 1978 § 4-46-1 ("In all suits or proceedings by or against a county, the name

in which the county shall sue or be sued shall be the board of county commissioners of the county

of ..........,"). Plaintiff's claim against MDC will be dismissed with prejudice.

D.  Plaintiff's Claims Individual Capacity Claims.

Plaintiff sues Gary Trujilo and the Chief and Assistant Chief of MDC in their individual

capacities. To state a claim against individual state actors, a plaintiff must make it clear in his

complaint "exactly *who* is alleged to have done what to *whom*, to provide each individual with fair

notice as to the basis of the claims against him or her, distinguished from collective allegations

against" defendants, generally. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). The

Complaint does not contain allegations showing what these individuals did in violation of

6

Plaintiff's constitutional rights. His claims against the individual defendants will therefore be dismissed without prejudice. Plaintiff will be given an opportunity to amend his complaint to remedy this defect. If he intends to pursue claims against the individual state actors, he should specify the wrongful conduct of every individual defendant giving rise to his claims against each of them. He should also endeavor to include allegations conforming to the substantive pleading standards set forth in the next section.

    E.   Pleading Standards Governing Plaintiff's Prospective Claims.

    1.   Cruel and Unusual Conditions of Confinement.

The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). "Also, the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment; and among unnecessary and wanton inflictions of pain are those that are totally without penological justification. *Grissom v. Roberts*, 902 F.3d 1162, 1174 (10th Cir. 2018) (alternations, internal quotation marks, and citation omitted). It is also "well established that prison officials violate the Eighth Amendment if their deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care." *Id.* (quoting *Estelle*, 429 U.S. at 104-05). Although pretrial detainees are protected under the Fourteenth

Amendment's Due Process Clause rather than under the Eighth Amendment's proscription against cruel and unusual punishment, the standards governing claims of cruel and unusual punishment are the same in either context. *Van Curen v. McClain Cnty. Bd. of Cnty. Comm'rs*, 4 Fed. App'x 554, 556 (10th Cir. 2001).

To prove that prison conditions amount to cruel and unusual punishment, the plaintiff must prove that the condition complained of is, "objectively, sufficiently serious" that it "results in the denial of the minimal civilized measure of life's necessities" (the "objective" component) and that the defendant prison official knew about, and remained deliberately indifferent to, the inmate's health or safety (the "subjective" component). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). If Plaintiff intends to pursue his Eighth Amendment claims against the officials in their individual capacities or against the entities, he must satisfy these pleading standards as well as those governing § 1983 claims generally.

2. Fourteenth Amendment.

Plaintiff's invocation of the Fourteenth Amendment claims may extend beyond his pretrial Eighth Amendment theories. To facilitate Plaintiff's ability to amend, the following is an overview of the legal standards governing prisoner Fourteenth Amendment claims, generally.

In relevant part, the Fourteenth Amendment prohibits states from depriving people of "life, liberty, or property, without due process of law" and from denying any person "equal protection of the laws." U.S. Const. amend. XIV. The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of life, liberty, or property. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies[.] *Wilkinson v. Austin*, 545 U.S. 209, 221, (2005) (citations omitted). Lawfully incarcerated persons retain only a narrow range of

protected liberty interests. *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir.1994). "[A] deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006), citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Neither the negligent nor the unauthorized, intentional deprivation of property by a state employee gives rise to a due process violation if state law provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional taking of property does not implicate due process clause where an adequate state post-deprivation remedy is available); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (inmate could not present claim against warden under § 1983 for negligent loss of inmate's property where existence of state tort claims process provided due process), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).

To state an equal protection claim, an inmate must allege facts demonstrating that prison officials treated him differently from similarly situated prisoners and that the disparate treatment was not reasonably related to penological interests. *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 752 (10th Cir. 2019); *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006).

3.  First Amendment.

Subject to reasonable limitations, inmates "retain protections afforded by the First Amendment[.]" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). Among the protections of the First Amendment are the free exercise of religion, freedom of speech, the right to peaceable assembly, and the right to petition the Government for a redress of grievances. U.S. Const. amend. I. The present Complaint does not include any discernable First Amendment theories. If Plaintiff believes that his First Amendment rights have been violated, he may file an amended pleading

showing that he is entitled to relief under § 1983 for violation of his First Amendment rights. *See* Fed. R. Civ. P. 8(a)(2) (requiring a plaintiff to provide a short and plain statement of his claim and entitlement to relief). The Court will not endeavor to construct legal theories for Plaintiff.

    4.   Plaintiff May Not Represent the Interests of Others.

To the extent Plaintiff seeks to pursue claims on behalf of other inmates, he is prohibited from doing so.  *Beierle v. Colorado Dep't of Corr.*, 79 F. App'x 373, 375 (10th Cir. 2003) ("[A] litigant may bring his own claims to federal court without counsel, but not the claims of others."); *Lyons v. Zavaras*, 308 F. App'x 252, 255 (10th Cir. 2009) (same).

    III.    Plaintiff May File an Amended Complaint.

Generally, *pro se* plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Plaintiff shall be granted a thirty-day deadline within which to file an amended complaint. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

    **IT IS ORDERED:**

    (1)    Each of the claims set forth in the complaint **(Doc. 1-1)** are **DISMISSED** without prejudice.

    (2)    Plaintiff is granted leave to file an amended complaint within thirty days of the entry of this Memorandum Opinion and Order.

_____
SENIOR UNITED STATES DISTRICT JUDGE