IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSHUA MICHAEL BEARDEN,

    Plaintiff,

v.                                                              No. 2:23-cv-583 JCH/DLM

BERNALILLO COUNTY, *et al.,*

    Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court upon review of Plaintiff's Amended Complaint, (Doc. 16), filed June 20, 2024, which fails to allege a plausible claim as he was previously directed. Plaintiff is incarcerated and is proceeding *pro se* and *in forma pauperis*. By Memorandum Opinion and Order entered May 23, 2024, the Court screened Plaintiff's Prisoner Civil Rights Complaint, (Doc. 2) ("Complaint"), determined it failed to state a cognizable claim, and granted leave for Plaintiff to file an amended civil rights complaint consistent with the legal standards governing claims under 42 U.S.C. § 1983. (Doc. 14) ("Screening Ruling"). In response to the Screening Ruling, Plaintiff filed a Motion to Amend, (Doc. 16), which the Court grants and construes as his Amended Complaint. For the reasons stated below, the Court finds the Amended Complaint does not cure the deficiencies in Plaintiff's original Complaint and will dismiss this case without prejudice.

**I.    Background**

In his original Complaint, Plaintiff alleges that during the year he was confined at the Bernalillo County Metropolitan Detention Center ("MDC") (from July 2021 through July 2022) he was subject to lockdowns lasting 72 hours at a time, and on one occasion, for six days. (Doc.

2) at 6.  He states that when jail officials let him out of his cell, he had 20 minutes to shower and use the phone, and he was not given adequate time for recreation or among the general jail population.  *Id.*  Plaintiff additionally alleges that when he first arrived at MDC, a corrections officer ("CO") escorting Plaintiff to his cell repeatedly grabbed Plaintiff by the arm, irritating a pre-existing scab.  *Id.* at 7.  When the CO did not comply with Plaintiff's request to stop grabbing that part of his arm, Plaintiff threw his arm out of the CO's grasp.  *Id.*  The CO then pushed Plaintiff and a group of people (identified only as "they") tackled Plaintiff, accused Plaintiff of threatening a CO, and sentenced Plaintiff to 60 days segregation with no visiting or canteen privileges.  *Id.*  Criminal charges filed against Plaintiff for the incident were dismissed when the CO involved in the incident did not appear at a court hearing.  *Id.*

In another incident, Plaintiff alleges that unknown individuals (again, identified only as "they") accused him of "grabb[ing] a girl's butt" on the way to court when he was in MDC custody.  *Id.*  Plaintiff alleges that a detective investigating the incident confirmed Plaintiff's version of events, *i.e.*, that he "ran into [the girl's] butt" when his hands were in his pockets.  *Id.*  Despite Plaintiff's denial and the apparent existence of video confirming his version of events, Plaintiff was sentenced to an additional 35 days in segregation.  *Id.*  In total, Plaintiff alleges he was in segregation for 95 days, during which time he was permitted to leave his cell for 45 minutes a day to shower and use the phone.  *Id.*

Plaintiff further alleges that in the year he spent in jail, he was transferred back and forth from MDC to Cibola County jail several times.  *Id.*  On three occasions when he went back to MDC from Cibola, he discovered that MDC officials threw away his canteen items and once threw away his shoes valued, collectively, at $400.  *Id.*  Plaintiff alleges that another inmate was reimbursed when his canteen items were thrown away, but Plaintiff was not.  *Id.* at 10.  When he

was transferred to prison, Plaintiff states he authorized MDC to release his property to his dad, but when his dad went to MDC to retrieve the property, MDC officials allegedly falsely told him that Plaintiff had not signed the release. *Id.*

Finally, Plaintiff alleges that in February or March 2022, he requested medical treatment for a growth on the inside of his lip. *Id.* A doctor and, separately, a dentist looked at the growth but could not diagnose it. *Id.* Someone ("they") allegedly told Plaintiff that he would have a biopsy, but four months passed before Plaintiff was moved out of MDC and into prison, and the biopsy was not performed. *Id.* Plaintiff also alleges that other medical conditions went ignored—namely, body sores from lying down all day, stomach aches from rotten food, and worsening mental health. *Id.*

Based on the foregoing, Plaintiff claims his rights guaranteed by the First, Eighth, and Fourteenth Amendments to the United States Constitution were violated by the numerous defendants. *Id.* at 3, 5. Plaintiff seeks $5 million in damages, half of which he would allocate to remediating the staffing shortage at MDC. *Id.* at 6.

The Court liberally construed the original Complaint in the Screening Ruling, and determined it failed to state a cognizable claim against Defendants. *See* (Doc. 14); *see also* 28 U.S.C. § 1915(e) (requiring *sua sponte* screening of *in forma pauperis* complaints). The Court incorporates the Screening Ruling into this dismissal Memorandum Opinion and Order.

In the Screening Ruling, the Court first considered Plaintiff's claims against the County of Bernalillo; Gary Trujillo, Jr. in his official capacity; the Chief and Assistant Chief of MDC in their official capacities; and the City of Albuquerque. (Doc. 14) at 5-6. The Court explained that to state a claim against a municipality, a plaintiff must allege facts showing that an official policy is the moving force behind the injury alleged. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir.

1998).  This requires the plaintiff to show "(1) a causal relationship between the policy or custom and the [alleged violation of a Constitutional right] and (2) deliberate indifference."  *Burke v. Regaldo*, 935 F.3d 960, 999 (10th Cir. 2019).  The "deliberate indifference" standard may be satisfied by showing that "a municipal actor disregarded a known or obvious consequence of" the attending custom or policy.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Suing an official in his official capacity is the same as asserting a claim against the municipality or county the official represents.  *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").  The Court found the allegations in the original Complaint do not satisfy these standards and dismissed the claims against the County, the City of Albuquerque, and the officials in their official capacities.  The Court explained that Plaintiff will be given an opportunity to file an amended complaint and, should he include claims against these defendants, he should endeavor to satisfy the required pleading standards.  (Doc. 14) at 6.

The Court further explained that MDC is not subject to liability under § 1983 because a "detention facility is not a person or legally created entity capable of being sued."  *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001); *Gaines v. U.S. Marshals Serv.*, 291 F. App'x 134, 135 (10th Cir. 2008) (a county detention center "is not a suable entity"); *Gallegos v. Bernalillo Cnty. Bd. of Cnty. Commr's*, 272 F. Supp. 3d 1256, 1267 (D.N.M. 2017) (In the § 1983 context, "suing a detention facility is the equivalent of attempting to sue a building.").  For claims against MDC, the Board of County Commissioners of the County of Bernalillo (named as a defendant in this case) is the proper defendant.  *See Mayfield v. Pres Hosp. Admin.*, No. CV 17-00398 JCH/KRS, 2021 WL 3772214, at *3 (D.N.M. Aug. 25, 2021) ("MDC is an agency of Bernalillo County, not a municipal agency[.]"); NMSA 1978 § 4-46-1 ("In all suits or proceedings by or against a county,

the name in which the county shall sue or be sued shall be the board of county commissioners of the county of ..........,"). Accordingly, the Court dismissed Plaintiff's claims against MDC with prejudice. (Doc. 14) at 6.

The Court then addressed Plaintiff's claims against Defendants Trujillo and the Chief and Assistant Chief in their individual capacities. *Id.* at 6-7. The Court explained that to state a claim against individual state actors, a plaintiff must make it clear in his complaint "exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, distinguished from collective allegations against" defendants, generally. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original). Because the original Complaint does not contain allegations showing what these individuals did in violation of Plaintiff's constitutional rights, the Court dismissed his claims against the individual Defendants without prejudice. The Court stated that if Plaintiff intends to pursue claims against the individual state actors in an amended complaint, he should specify the wrongful conduct of every individual defendant giving rise to his claims against each of them, and endeavor to include allegations conforming to substantive pleading standards. (Doc. 14) at 7. The Court then provided the pleading standards for Eighth Amendment claims for cruel and unusual punishment regarding prison conditions, and for claims under the First and Fourteenth Amendments. *Id.* at 7-10.

Consistent with *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990), the Court *sua sponte* permitted Plaintiff to file an amended complaint within thirty days consistent with the legal standards governing claims under 42 U.S.C. § 1983. (Doc. 14) at 10. Plaintiff was warned that the failure to file a timely amended complaint could result in the dismissal of this case with prejudice. *Id.* On June 20, 2024, Plaintiff filed his Motion to Amend Complaint. (Doc. 16). While the Court's Local Rules require that the proposed amendment to a pleading be attached to a motion

to amend, D.N.M. LR-Civ. 15.1, Plaintiff's Motion to Amend appears to be filed in response to the Screening Ruling as Plaintiff's attempt to amend his Complaint. The Motion to Amend primarily sets forth factual allegations regarding Plaintiff's claims. Accordingly, the Court grants the Motion to Amend (Doc. 16), and liberally construes it as Plaintiff's Amended Complaint.

## II.     Standard of Review

As set forth in the Screening Ruling, the Court must dismiss a complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted," or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1). "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may also dismiss a complaint *sua sponte* under Rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted). To avoid dismissal for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief about the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A court must accept all the well-pleaded allegations of the complaint as true and must construe the allegations in the light most favorable to the plaintiff. *Id.* at 555. Nevertheless, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. *Id.* at 558.

The Court construes *pro se* pleadings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *Hall,* 935 F.2d at 1110. While *pro se* pleadings are judged by the same legal standards that apply to represented litigants, the Court can overlook the

"failure to cite proper legal authority, … confusion of various legal theories, … poor syntax and sentence construction, or … unfamiliarity with pleading requirements." *Id.* Nevertheless, it is not the "proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*

## III.    Plaintiff's Amended Complaint

In his Amended Complaint, Plaintiff restates his claims that unnamed COs grabbed him by his scabbed arm and tackled him, that he was not paid back for his canteen items, that he was subjected to excessive lockdowns and was wrongfully put in segregation for 95 days, and that medical staff never conducted a biopsy for a growth on his lip. (Doc. 16) at 1-2. He states he does not know the officers' names who grabbed him or tackled him, and names "Lieutenant Woodward" as "the one who kept me in seg." *Id.* at 1. He also names "Captain Gonzalez" as the CO he requested to get paid back for his canteen items and to be let out of segregation. *Id.* at 1, 3. He states he thinks he put in a request to a female captain as well, but he cannot remember her name. *Id.* at 3. Finally, Plaintiff states he is "suing the Board of County Commissioners of the County of Bernalillo" because the COs were not treating him like other inmates. *Id.*

### A.    Claims against the Board of County Commissioners

As explained in the Screening Ruling, to state a claim against a municipality, a plaintiff must allege facts showing that an official policy is the moving force behind the injury alleged. *Barney*, 143 F.3d at 1307. This requires the plaintiff to show "(1) a causal relationship between the policy or custom and the [alleged violation of a Constitutional right] and (2) deliberate indifference." *Burke*, 935 F.3d at 999. The "deliberate indifference" standard may be satisfied by showing that "a municipal actor disregarded a known or obvious consequence of" the attending custom or policy. *Connick*, 563 U.S. 61. Plaintiff here does not identify an official policy or custom as the moving force behind any alleged injury. Nor does he allege that any defendant

disregarded a known or obvious consequence of a custom or policy.  Accordingly, the Court finds that Plaintiff does not state a viable claim against the Board of Commissioners.

### B.  Claims against Named Defendants

Plaintiff names two Defendants in his Amended Complaint—"Lt. Woodward" and "Captain Gonzalez."  (Doc. 16) at 1, 3.  He alleges that Lieutenant Woodward "kept [him] in" segregation, and that Plaintiff asked Captain Gonzalez to reimburse him for his canteen items and release him from segregation.  *Id.*  Plaintiff alleges there were excessive lockdowns the entire time he was at MDC, including a six-day period of being in his cell "without coming out at all … to shower or anything," and that he was wrongfully put in segregation for 95 days.  *Id.* at 2.

As explained in the Screening Ruling, the Eighth Amendment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm."  *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).  Although pretrial detainees are protected under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment's proscription against cruel and unusual punishment, the standards governing claims of cruel and unusual punishment are the same in either context.  *Van Curen v. McClain Cnty. Bd. of Cnty. Comm'rs*, 4 F. App'x 554, 556 (10th Cir. 2001).  To state a claim that prison conditions amount to cruel and unusual punishment, a plaintiff must allege that the condition complained of is, "objectively, sufficiently serious" so that it "results in the denial of the minimal civilized measure of life's necessities" (the "objective" component), and that the defendant prison official knew about, and remained deliberately indifferent to, the inmate's health or safety (the "subjective" component).  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Extended periods of in-cell lockdown satisfy the objective component of an Eighth Amendment claim in some circumstances. *See, e.g., Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 810 (10th Cir. 1999) ("[T]here can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment[.]"); *Thompson v. Lengerich*, 798 F. App'x 204, 212 (10th Cir. 2019) (holding that prolonged lockdowns and increased danger to inmates resulting from policy of understaffing stated Eighth Amendment claim). On the other hand, conditions of confinement may be restrictive and harsh without violating the Eighth Amendment. *Barney v. Pulsipher*, 143 F.3d 1299, 1311-12 (10th Cir. 1998). In evaluating whether a condition of confinement allegation amounts to "cruel and unusual punishment," the Court must consider "the frequency and duration of the condition, as well as the measures employed to alleviate the condition." *Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001).

Plaintiff here alleges a six-day period of being in his cell "without coming out at all … to shower or anything." (Doc. 16) at 2. Federal courts have routinely dismissed Eighth Amendment claims predicated upon similar allegations of temporarily inadequate shower access. *See, e.g., Thompson v. Lengrich*, 2022 WL 1177840, *11-12 (D. Colo. Feb. 28, 2022) (no Eighth Amendment violation based on allegation of deprivation of private shower for 25 days because inmate did not allege lack of access to any shower or water source); *Scott v. Carpenter*, 24 F. App'x 645, 648 (8th Cir. 2001) (no Eighth Amendment violation where inmate received only fifteen showers over six months and once went twenty-eight days without a shower, because inmate's cell had "soap, water, wash cloths, and towels" and prison officials "offered [the inmate] showers or warm water for sponge baths at his request and never interfered with his requests"); *Banks v. Argo*, 2012 WL 4471585, at *4 (S.D.N.Y. Sept. 25, 2012) (no Eighth Amendment violation relating to showers, where the inmate did not allege that "he had no other means of

cleaning himself"); *Richard v. Aldridge*, 2020 WL 469348, at *2 (E.D. Cal. Jan. 29, 2020) ("There is no constitutional right to a certain number of showers per week and an occasional or temporary deprivation of a shower does not rise to the level of a constitutional violation."); *Barndt v. Wenerowicz*, 2016 WL 6612441, at *4 (E.D. Pa. Nov. 8, 2016) (no Eighth Amendment violation resulting from "the denial of out of cell exercise and showers for twenty-eight days," where evidence showed that the inmate "had the space to exercise and running water inside his cell"). Plaintiff does not allege he was deprived of any ability to clean himself, and he does not allege he was deprived of any other necessities during this time period.  Accordingly, Plaintiff's allegations do not show "extreme deprivations" of "the minimal measure of life's necessities," which is required to state a conditions of confinement claim.  *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).

Regarding Plaintiff's claims that he experienced excessive lockdowns and was placed in segregation for 95 days, the Amended Complaint provides no details regarding the conditions of confinement during this time period.  Nor does Plaintiff allege that he was deprived of any basic necessities, such as food, clothing, shelter, medical care, or reasonable safety measures.  *See Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).  Moreover, the lengths of time Plaintiff alleges he spent in lockdowns (one year) and segregation (95 days) do not by themselves satisfy the objective component of an Eighth Amendment claim.  *See, e.g., Peoples v. CCA Detention Ctrs.*, 422 F.3d 1090, 1106-07 (10th Cir. 2005) (pretrial detainee placed in segregation for approximately 390 days did not state a due process claim, where the detainee was a known escape risk); *Stallings v. Werholtz*, 492 F. App'x 841, 845-46 (10th Cir. 2012) (inmate's placement in administrative segregation for over three years was not constitutionally infirm where he received monthly reviews in which he was allowed to participate); *Ajaj v. United States*, 293 F. App'x 575, 582-84 (10th Cir. 2008) (conditions such as "lock-down for 23 hours per day," "limitations on ... access to

telephones," and "limited ability to exercise outdoors" did not, individually or in concert, amount to an Eighth Amendment violation); *Hill v. Pugh*, 75 F. App'x 715, 721 (10th Cir. 2003) (no cruel and unusual punishment where inmate was "isolated in his cell twenty-three hours a day for five days a week and twenty-four hours the remaining two days"); *Silverstein v. Fed. Bureau of Prisons*, 559 F. App'x 739, 755 (10th Cir. 2014) (no violation where plaintiff ate alone, had no phone calls or face-to-face interaction, and only had ten hours per week of recreation time); *Trujillo v. Williams*, 465 F.3d 1210, 1225 n.17 (10th Cir. 2006) (allegations of limited access to education, employment, religious programming, housing assignment, recreation time and equipment, the telephone, and the commissary did not establish a sufficient serious deprivation); *Ellis v. Denver Cnty. of City*, 2024 WL 3950932, at *14 (D. Colo. Aug. 27, 2024) (placement in administrative segregation for seventeen months did not satisfy objective component of conditions of confinement claim).

In addition, to the extent Plaintiff satisfies the objective component, he fails to allege facts showing that any Defendant knew his or her actions posed a risk of harm to Plaintiff. The Amended Complaint contains no allegations "of [each individual] prison official's culpable state of mind" and, therefore, fails to satisfy the subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005); *Farmer*, 511 U.S. at 837 (Each defendant must "know[] of and disregard[] an excessive risk to inmate … safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). To the extent Plaintiff intends to raise a due process claim based on his placement in segregation, he must allege facts showing that it affected the duration of his confinement or imposed an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 482, 484, 485-87 (1995) (noting that in evaluating such a claim, courts

must afford "appropriate deference and flexibility to state officials trying to manage a volatile environment"). Plaintiff does not allege that his placement in segregation imposed an atypical or significant hardship on him, or that it affected the duration of his sentence. For these reasons, the Amended Complaint's conclusory allegations regarding lockdowns and segregation fail to state a cognizable constitutional claim.

Plaintiff's remaining allegation against a named Defendant is that he made requests to Captain Gonzales to be reimbursed for his canteen items. (Doc. 16) at 1. As explained in the Screening Ruling, neither the negligent nor the unauthorized, intentional deprivation of property by a state employee gives rise to a due process violation if state law provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional taking of property does not implicate due process clause where an adequate state post-deprivation remedy is available); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (inmate could not present claim against warden under § 1983 for negligent loss of inmate's property where existence of state tort claims process provided due process), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Plaintiff does not allege the lack of an adequate state remedy and, therefore, fails to state a deprivation of property claim. *See Montana v. Hargett*, 84 F. App'x 15, 16 (10th Cir. 2003) ("[T]o state a § 1983 claim, [Plaintiff] was required to plead the inadequacy or unavailability of a post deprivation remedy.") (citing *Durre v. Dempsey*, 869 F.2d 543, 548 (10th Cir. 1989)).

### C. Remaining Claims

Plaintiff's remaining claims are that he was grabbed and tackled by unnamed COs, that a medical staff member failed to conduct a biopsy, and that unnamed COs reimbursed another inmate for that inmate's canteen items, but Plaintiff was not reimbursed. (Doc. 16) at 1-3. As the Screening Ruling explains, to state a claim against individual state actors, Plaintiff must

make it clear "exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him … ." *Robbins*, 519 F.3d at 1250.  Plaintiff makes no attempt to identify the unnamed defendants, which is not sufficient to state a § 1983 claim.  *See Roper v. Grayson*, 81 F.3d 124, 126 (A plaintiff may "use unnamed defendants so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served.").

Moreover, even if Plaintiff had identified these individuals, he fails to adequately plead a constitutional violation as the Screening Ruling instructed.  Regarding Plaintiff's claims that COs grabbed his arm and tackled him and that a medical staff member failed to conduct a biopsy, Plaintiff does not allege either a "sufficiently serious" condition or that the prison officials knew about, and remained deliberately indifferent to, Plaintiff's health or safety.  *See Farmer*, 511 U.S. at 834.  To the extent Plaintiff intends to raise an equal protection claim regarding his property, he fails to allege facts showing prison officials treated him differently from similarly situated prisoners and that the disparate treatment was not reasonably related to penological interests.  *See Hale v. Fed. Bur. Of Prisons*, 759 F. App'x 741, 752 (10th Cir. 2019); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("[T]o prevail on his equal protection claim [the plaintiff] would have to prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose.") (internal quotation marks omitted).  Accordingly, "[Plaintiff's] allegations are merely conclusory in that they do not allege the factual basis for an equal protection claim, and even pro se litigants must do more than make mere conclusory statements regarding constitutional claims."  *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995).

IV.    **Conclusion**

For each alternative reason above, the Court concludes that Plaintiff did not cure the pleading defects identified in the Screening Ruling, and his Amended Complaint fails to state a plausible claim for relief against the named Defendants.  Ordinarily, courts dismiss with prejudice where the prior complaint does not state a cognizable claim and the plaintiff fails to amend as directed.  *See, e.g., Novotny v. OSL Retail Servs. Corp.*, 2023 WL 3914017, at *1 (10th Cir. June 9, 2023) (affirming district court's dismissal of amended complaint with prejudice where the district court rejected a "claim but gave [plaintiff] leave to amend, cautioning that failure to allege a plausible claim would result in a dismissal").  Based on the nature of his claims, Plaintiff may survive initial review if he eventually refiles and connects a defendant to each alleged wrongdoing. Therefore, the Court, in its discretion, will dismiss this case without prejudice pursuant to 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  *See Smith-Bey v. Hosp. Adm'r*, 841 F.2d 751, 756 (7th Cir. 1988) (construing § 1915(e) to permit screening dismissals with or without prejudice, even where the complaint fails to state a claim).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Amend, (**Doc. 16**) is **GRANTED** and construed as an Amended Complaint.

**IT IS FURTHER ORDERED** that all claims in this case, including Plaintiff's Amended Complaint (**Doc. 16**), are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e) and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  The Court will enter a separate judgment closing the civil case.

_____
SENIOR UNITED STATES DISTRICT JUDGE